# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **RONALD MATTHEWS** | **CIVIL ACTION** |
| **VERSUS** | **No. 17-8800** |
| **LT. M. LEBLANC ET AL.** | **SECTION I** |

## ORDER & REASONS

Plaintiff Ronald Matthews ("Matthews") objects to the issue of qualified immunity being presented to the jury. Matthews' objection is overruled.

Matthews contends that the issue of qualified immunity is a question of law for the Court to decide and that, as such, the issue cannot be presented to the jury. Matthews' counsel maintains that the defendants can "cite to no law to support" the position that a jury may be instructed on qualified immunity. Further, she avers that she has been unable "to find any case out of the Fifth Circuit in recent years wherein the Fifth Circuit found it appropriate for a trial court to direct the issue to a jury."[1] These statements are, quite simply, baffling, and possibly knowingly untrue.

At the final pretrial conference on May 3, 2018, the Court directed Matthews' counsel to Fifth Circuit Civil Pattern Jury Instruction § 10.3, which—interestingly enough—provides an instruction for district court judges in the Fifth Circuit to use when instructing a jury on the issue of qualified immunity. Had Matthews' counsel taken the time to peruse the pattern instruction and the notes that follow, she would

---

[1] R. Doc. No. 55 ¶ 3.

have discovered a citation to *McCoy v. Hernandez*, 203 F.3d 371, 376 (5th Cir. 2000), a case in which the Fifth Circuit explicitly disagreed with the very argument she now espouses.  Further, had Matthews' counsel exercised even a bit more diligence by, for example, reading *McCoy* or conducting a modicum of legal research, she would have found additional cases like *Waganfeald v. Gusman*, 674 F.3d 475 (5th Cir. 2012), *Snyder v. Trepagnier*, 142 F.3d 791 (5th Cir. 1998), *Presley v. City of Benbrook*, 4 F.3d 405 (5th Cir. 1993), and *Melear v. Spears*, 862 F.2d 1177 (5th Cir. 1989), all of which make perfectly clear that the issue of qualified immunity may be decided by a jury in certain circumstances.

What makes Matthews' counsel's objection all the more egregious, however, is the fact that she did not even need to look past her own filing cabinet to find recent case law in which a federal judge flatly rejected the arguments she raises here. Matthews' counsel served as counsel for the plaintiff in *Hill v. Kilbourne*, No. 11-778, 2015 WL 1143074 (M.D. La. March 12, 2015) (deGravelles, J.).  In that case, she filed a virtually identical objection and memorandum in support.  The Court referred to the pattern jury instruction on qualified immunity and cited *McCoy* and *Waganfeald* in overruling the objection.  Nevertheless, Matthews' counsel bizarrely continues to insist that there is no legal authority to suggest that the issue of qualified immunity may be submitted to the jury in some cases.

In support of her position, Matthews' counsel points the Court to *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010), in which the Fifth Circuit observed that "[w]hether an official's conduct was objectively reasonable is a question of law for the

2

court, not a matter of fact for the jury." This, Matthews' counsel argues, is the end of the matter: qualified immunity simply cannot be decided by the jury.

*Brown*, however, cannot be read in a vacuum. Despite the seeming clarity of its language, *Brown* can easily be reconciled with cases like *Melear*, *Presley*, *Snyder*, *McCoy*, and *Waganfeald*, all of which openly anticipate that qualified immunity may sometimes be appropriately submitted to the jury and none of which *Brown* purported to overrule.[2]

In stating that objective reasonableness in the qualified immunity context is a question of law to be kept from the jury, the *Brown* court relied on *Williams v. Bramer*, 180 F.3d 699, 703 (5th Cir. 1999), which in turn relied on *Mangieri v. Clifton*, 29 F.3d 1012 (5th Cir. 1994). In *Mangieri*, the panel differentiated between those cases in which the facts are well-established and those in which there are "underlying historical facts in dispute that are material to the resolution of the question[] whether the defendants acted in an objectively reasonable manner." 29 F.3d at 1016 (quoting *Lampkin v. City of Nacodoches*, 7 F.3d 430, 435 (5th Cir. 1993)). With respect to the former, "the district court is to make a determination of the objective reasonableness of [an] official's act as a matter or law." *Id.* With respect to the latter, the district court may find itself "unable to make the determination of the objective

---

[2] Indeed, *Brown* could not have overruled these cases. *See Jacobs v. Nat'l Drug Intelligence Ctr.*, 548 F.3d 375, 378 (5th Cir. 2008) ("It is a well-settled Fifth Circuit rule of orderliness that one panel of our court may not overturn another panel's decision, absent an intervening change in the law, such as by a statutory amendment, or the Supreme Court, or our *en banc* court. Indeed, even if a panel's interpretation of the law appears flawed, the rule of orderliness prevents a subsequent panel from declaring it void." (citations omitted)).

3

reasonableness of the officer's activities 'without settling on a coherent view of what happened in the first place,'" in which case qualified immunity may be addressed by the jury. *See id.* (quoting *Lampkin*, 7 F.3d at 430).

Taken together, this family of cases stands for a rather straightforward proposition. When "there is general agreement as to the factual events that gave rise to [the] lawsuit," *Mangieri*, 29 F.3d at 1015, the issue of qualified immunity should be decided as a matter of law by the court via pretrial motion at the earliest possible stage. When, however, the underlying facts of the case are in dispute and the issue has not been decided before trial, qualified immunity may be sent to the jury.

This view is supported by various Fifth Circuit cases. For instance, as the *Presley* court noted,

> [In *Hunter v. Bryant*, 502 U.S. 224 (1991),] the Supreme Court [] said that immunity is a question that should ordinarily be settled at the earliest possible stage in litigation. We agree, as we must, with this precept. Its purpose is two-fold. First, it enforces the guarantee of qualified immunity as a defense against suit and not merely against liability. Second, that statement recognizes that insofar as immunity protects all but the plainly incompetent or those who knowingly violate the law, it is an issue that may ordinarily be resolved no later than after preliminary discovery specifically related to qualified immunity. Immunity's shield against suit is lost, [however], when police officer defendants go to trial. At that point, if—and this is a big if—there remain disputed issues of material fact relative to immunity, the jury, *properly instructed*, may decide the question.

4 F.3d at 409–10 (quotations and citations omitted) (emphasis added).

4

Further,

> A district judge may determine that a factual dispute exists that precludes summary judgment, or, as in this case, a defendant may fail to or choose not to move for summary judgment. In these instances, the policies encouraging pretrial, speedy immunity determinations—in particular, the policy favoring avoidance of the processes of litigation—do not apply, of course. At this point, then, the trier of fact must determine the objective legal reasonableness of an officer's conduct by construing the facts in dispute.

*Melears*, 862 F.2d at 1184 (citations omitted). Thus, "[w]hile qualified immunity ordinarily should be decided by the court long before trial, if the issue is not decided until trial, the defense is not waived but goes to the jury." *Snyder*, 143 F.3d at 799; *see also McCoy*, 203 F.3d at 376; *Waganfeald*, 674 F.3d at 483–84.

In this case, the defendants have not moved for summary judgment on the issue of qualified immunity. Various facts remain in dispute, and trial is rapidly approaching.

Accordingly,

**IT IS ORDERED** that Matthews' objection regarding qualified immunity is **OVERRULED**. Matthews' counsel is reminded of her ethical obligations under the Louisiana Rules of Professional Conduct to disclose legal authority in the controlling jurisdiction known to her to be directly adverse to the position of her client and not disclosed by opposing counsel. La. R. Prof'l Conduct 3.3(a)(2). She is further cautioned to avoid filing such patently frivolous pleadings before this Court in the future. Failure to abide by this directive will result in the imposition of sanctions and other disciplinary action.

New Orleans, Louisiana, May 14, 2018.

                    **LANCE M. AFRICK**
                **UNITED STATES DISTRICT JUDGE**